OLIVIA BUCKNER BAILEY,                          IN THE
On Her Own Behalf and on Behalf Of All Other
Consumers Similarly Situated,

                                                CIRCUIT COURT

          Plaintiff,

v.                                              FOR

ATLANTIC AUTOMOTIVE CORP., et al.               BALTIMORE COUNTY

          Defendant.

                                                Case No.: 03-C-13-000869

## FIRST AMENDED CLASS ACTION COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiff Olivia Buckner Bailey ("Named Plaintiff"), on her own behalf and on behalf of

all others similarly situated, by and through attorneys Richard S. Gordon, Benjamin H. Carney

and Stacie F. Dubnow of Gordon & Wolf, Chtd., and Mark H. Steinbach of O'Toole Rothwell,

sues Atlantic Automotive Corp.; Heritage Chevrolet-Buick, Inc. t/a Heritage Chevrolet, Heritage

Buick; Heritage Imports, Inc. t/a Heritage Subaru, Heritage Volkswagen; Heritage of Owings

Mills II, Inc. t/a Heritage Chrysler Dodge Jeep Ram Owings Mills; I. Heritage, Inc. t/a Heritage

Mazda; Heritage of Towson, Inc. t/a Heritage Honda; Heritage of Towson II, Inc. t/a Heritage

Hyundai Towson; Heritage of Towson III, Inc. t/a Heritage Mazda Towson; Heritage of Owings

Mills, Inc. t/a Heritage Fiat; Griffith Auto Group, Inc. t/a Heritage Chrysler Dodge Jeep Ram

Parkville; Griffith Auto Group, Inc. t/a Heritage Volkswagen Parkville; Heritage of Belair, Inc.

t/a Heritage Mazda of Bel Air; Heritage of Bel Air, Inc. t/a Heritage Automall of Bel Air; Herb

Gordon Auto Group, Inc. t/a Herb Gordon Subaru; Herb Gordon Auto Group, Inc. t/a Herb

Gordon Volvo; Tischer Autopark, Inc. t/a Porsche of Silver Spring; Tischer Autopark, Inc. t/a

Audi of Silver Spring; Tischer Autopark, Inc. t/a BMW of Silver Spring; Herb Gordon Auto

**EXHIBIT**

A-10

Group, Inc. t/a Mercedes-Benz of Silver Spring; Herb Gordon Auto Group, Inc. t/a Herb Gordon Nissan; Heritage of Westminster, Inc. t/a Heritage Honda of Westminster; and Annapolis Motors, LLC t/a Mercedes-Benz of Annapolis and Smart Center of Annapolis.

All of the defendants except for Atlantic Automotive Corp. ("Atlantic") hereinafter collectively are referred to as the "Dealer Defendants". All of the defendants including Atlantic hereinafter collectively are referred to as the "Defendants" or "MileOne Automotive". The Plaintiff alleges and states as follows:

## I.   INTRODUCTION

1.     This is an Amended Complaint against the Defendants, who associated as MileOne Automotive, for violating and conspiring to systematically violate statutory and common law obligations governing motor vehicle sales that provide significant safeguards to consumers purchasing used vehicles.

2.     In Maryland, when a motor vehicle dealer sells a vehicle that previously was used for some purpose other than as a consumer good, it must disclose the former use clearly and conspicuously to its prospective customer. COMAR 11.12.01.14(M)(1). One of the commercial uses for which disclosure specifically is required relates to vehicles that have been used as short-term rentals. COMAR 11.12.01.14(M)(1)(f).

3.     Named Plaintiff and the Class are persons who purchased a used motor vehicle from one of the Dealer Defendants' dealerships in Maryland that previously had been used for a short-term rental, but were not provided clear and conspicuous notice of such use as required by Maryland law. As the Maryland Motor Vehicle Administration ("MVA") has recognized — and as the Defendants well know — many car buyers seek to avoid vehicles used for short-term rental because of the perception that these vehicles often are driven hard by drivers who care little

about them, may not have been well maintained or consistently maintained, and more often are involved in accidents than vehicles used for personal, family, and household purposes.

4.      The Dealer Defendants failed to disclose and intentionally concealed from Named Plaintiff and the Class the material fact that the vehicles sold to them were previously used as short-term rentals.  In so doing, the Dealer Defendants violated a clear and explicit disclosure requirement governing motor vehicle sales in Maryland. This suit seeks to end Defendants' illegal sales practices and to obtain compensation for the losses sustained by Named Plaintiff and members of the Class.

5.      The Dealer Defendants – informally associated with Atlantic as "MileOne Automotive," a non-incorporated group – conspired among themselves by agreement and understanding to engage in the unlawful acts described herein, which resulted in legal damages to the Named Plaintiff and the Class.

6.      The Defendants associated together under the non-incorporated MileOne Automotive umbrella to advertise and market as one entity, and they agreed to develop and use form documents used by each of the Dealer Defendants in the course of vehicles sales.  The sales agreements developed by Atlantic and used by the Dealer Defendants repeatedly referenced MileOne and other Dealer Defendants, confirming their association-in-fact.

7.      By choosing to identify and brand themselves as "MileOne Automotive" on their sales agreements, on their websites, and in other marketing materials, Defendants associated together to present themselves to their customers and the world as a single entity.

8.      "MileOne Automotive" is not a business entity registered to do business with the Maryland Department of Assessments and Taxation, yet it holds itself out to the public as an association of car dealers doing business in the state.

9.      The Defendants market themselves through a common website and under the same MileOne logo, and the Defendants deliberately use the MileOne moniker as a way of branding the dealerships and making them appear as part of a large umbrella entity – although each of the Defendants, including Atlantic, is separately incorporated.  For example, MileOne Automotive's website emphasizes that it brings together the "Hall, Heritage, Herb Gordon and MotorWorld Automotive Groups along with Mercedes-Benz of Annapolis." www.mileone.com (retrieved April 4, 2013).

10.     On information and belief, all of the dealers that comprise MileOne Automotive in Maryland are managed and/or operated by Defendant Atlantic.  Upon information and belief, Atlantic is the parent corporation of the Dealer Defendants and owns all or some portion of all of the Dealer Defendants. The Chief Executive Officer of Atlantic is the Chief Executive Officer of approximately nine (9) of the Dealer Defendants. The above-described association between Atlantic and the Dealer Defendants as MileOne Automotive is marketed as part of a large, legitimate enterprise that certainly would abide by Maryland law.

11.     Through their association, however, the Defendants developed and agreed upon the uniform and systematic scheme described herein to acquire and sell prior short-term rental vehicles to consumers without the disclosures required under Maryland law, with misleading and fraudulent omissions and representations concerning the history of these vehicles, and with the specific intent to deceive and defraud the Named Plaintiff and members of the Class.  As a result of this scheme and conspiracy, the Named Plaintiff and members of the Class were damaged.

12.     The Defendants purchase a large number of used vehicles that previously were used as short-term rentals.  On information and belief, the Defendants purchase these rental vehicles directly from rental car operators like Hertz, Avis and Enterprise, from dealer auctions

or from the general public, and systematically place these vehicles on the used car lots of the Dealer Defendants alongside other similar used vehicles that were not used as short-term rentals. At the time of the purchases of Named Plaintiff and the Class, the Dealer Defendants took no steps to differentiate for their customers one car (the prior short-term rental) from the next (the vehicle previously used only for personal use).

13.    Because prior short-term rental vehicles are harder to sell and consistently result in a lower selling price, the Dealer Defendants also conceal the vehicle's prior use as a short-term rental at the point of purchase by uniformly and consistently failing to present the consumer with a clear and conspicuous written disclosure of the vehicle's rental history on the sales agreement as required under Maryland law.

14.    The Defendants' affirmative acts and concealments of a vehicle's prior rental history clearly violate Maryland's motor vehicle laws and other consumer protection laws.

15.    Defendants' clear violations of Maryland law, and their conspiracy to commit those violations, have enriched them unjustly at the expense of hundreds and potentially thousands of Maryland consumers. Because Maryland law requires that any prior short-term rental history be disclosed "clearly and conspicuously" on a vehicle sales contract, the Dealer Defendants' failure to make such a disclosure constituted an affirmative misrepresentation and concealment by the Dealer Defendants of the vehicle's history on the vehicle sales agreements of the Named Plaintiff and the Class. Defendants' use of such vehicle sales agreements and other form documents to conceal the prior rental history of the vehicles sold to Named Plaintiff and other members of the Class, as well as their uniform non-disclosures and uniform affirmative misrepresentations on those forms, make this case particularly suitable for resolution through a class action lawsuit.

16.    The Defendants named in this consumer class action acted in concert to accomplish, and jointly and individually benefitted from, the scheme described herein.

## II.    PARTIES

17.    Named Plaintiff Olivia Buckner Bailey is a resident of Owings Mills, Maryland. On June 16, 2009, she purchased a used Mazda CX-7 from Heritage Chevrolet-Buick, Inc. ("Heritage"), a MileOne Automotive dealer. Unbeknownst to Named Plaintiff at the time of sale, despite the exercise of ordinary diligence, the car previously had been used for purposes other than as a consumer good. Defendants never disclosed to Named Plaintiff that the vehicle she purchased was previously used for a purpose other than as a consumer good or, specifically, that it had been used for short-term rental.

18.    The Defendants in this case all associated and conspired together under the moniker MileOne Automotive – a name that, as stated, is not registered with the Maryland Department of Assessments and Taxation, but for which Defendants have set up a website, www.mileone.com. Defendants conduct the majority of their advertising under the "MileOne Automotive" name. According to Defendants' website, MileOne Automotive has 23 dealerships in Maryland selling a large variety of new and used vehicles including Mercedes Benz, Nissan, Subaru, Smart, Volvo, BMW, Porsche, Cadillac, Chevy, Buick, Chrysler, Dodge, Jeep, Ram, Fiat, Honda, Hyundai, Mazda and Volkswagen.

19.    Defendant Atlantic is an entity whose principal place of business in Maryland is located at 1 Olympic Place, Suite 200, Towson, Maryland 21204 and, on information and belief, is an entity that represents, owns and operates car dealerships and/or whose subsidiaries represent, own and operate car dealerships located in the state of Maryland. Atlantic is engaged

in selling vehicles through multiple dealerships that it owns and operates, many of which are located in Maryland.

20.     Defendant Tischer Autopark, Inc. t/a Audi Silver Spring is a Maryland entity whose principal place of business is located at 3151 Automobile Blvd., Silver Spring, MD 20904. Tischer Autopark, Inc., also trades as BMW of Silver Spring, whose principal place of business is located at 3211 Automobile Blvd., Silver Spring, MD, 20904. Tischer Autopark, Inc. also trades as Porsche of Silver Spring, whose principal place of business is located at 3141 Automobile Blvd., Silver Spring, Maryland 20904.   On information and belief, Tischer Autopark, Inc. is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland.  Each of its dealerships is primarily engaged in selling vehicles to consumers.

21.     Defendant Herb Gordon Auto Group, Inc. t/a Mercedes-Benz of Silver Spring is a Maryland entity whose principal place of business is located at 3301 Briggs Chaney Road, Silver Spring, Maryland 20904. Defendant Herb Gordon Auto Group, Inc., also trades as Herb Gordon Nissan, a Maryland entity whose principal place of business is located at 3131 Automobile Blvd., Silver Spring, Maryland 20904. Defendant Herb Gordon Auto Group, Inc. also trades as Herb Gordon Subaru, a Maryland entity whose principal place of business is located at 3161 Automobile Blvd., Silver Spring, Maryland 20904.  Defendant Herb Gordon Auto Group, Inc. also trades as Herb Gordon Volvo, a Maryland entity whose principal place of business is located at 3121 Automobile Blvd., Silver Spring, Maryland 20904.  Defendant Herb Gordon Auto Group, Inc., on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland.  Each of its dealerships is primarily engaged in selling vehicles to consumers.

22.     Defendant Annapolis Motors, LLC t/a Mercedes-Benz of Annapolis and as Smart Center of Annapolis, is a Maryland entity whose principal place of business is located at 324 Sixth Street, Annapolis, MD 21403 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Defendant Annapolis Motors, LLC is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

23.     Defendant Heritage of Bel Air, Inc., t/a Heritage Automall of Bel Air is a Maryland entity whose principal place of business is located at 716 Belair Road, Bel Air, Maryland 21014 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Bel Air, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

24.     Defendant Heritage of Owings Mills II, Inc. t/a Heritage Chrysler Dodge Jeep Ram Owings Mills is a Maryland entity whose principal place of business is located at 11212 Reisterstown Road, Owings Mills, Maryland 21117 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Owings Mills II, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

25.     Defendant Heritage of Owings Mills, Inc. t/a Heritage Fiat is a Maryland entity whose principal place of business is located at 11216 Reisterstown Road, Owings Mills, MD 21117 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of

Owings Mills, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

26.     Defendant Heritage of Towson, Inc. t/a Heritage Honda is a Maryland entity whose principal place of business is located at 9213 Harford Rd., Parkville, Maryland 21234 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Towson, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

27.     Defendant Heritage of Westminster, Inc. t/a Heritage Honda of Westminster is a Maryland entity whose principal place of business is located at 580 Baltimore Blvd., Westminster, Maryland 21157 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Westminster, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

28.     Defendant Heritage of Towson II, Inc. t/a Heritage Hyundai Towson is a Maryland entity whose principal place of business is located at 801 York Road, Towson, Maryland 21204 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Towson II, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

29.     Defendant I. Heritage, Inc. t/a Heritage Mazda is a Maryland entity whose principal place of business is located at 11220 Reisterstown Road, Owings Mills, Maryland 21117 and, on information and belief, is an entity that owns and operates car dealerships and/or

whose subsidiaries own and operate car dealerships located in the state of Maryland. I. Heritage is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

30.     Defendant Heritage of Bel Air, Inc. t/a Heritage Mazda of Bel Air is a Maryland entity whose principal place of business is located at 710 Belair Road, Bel Air, Maryland 21014 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Bel Air, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

31.     Defendant Heritage of Towson III, Inc. t/a Heritage Mazda Towson is a Maryland entity whose principal place of business is located at 1630 York Road, Lutherville, Maryland 21093 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage of Towson III, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

32.     Defendant Heritage Imports, Inc. t/a Heritage Subaru and as Heritage Volkswagen, is a Maryland entity whose principal place of business is located at 9808 Reisterstown Road, Owings Mills, Maryland 21117 and, on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Heritage Imports, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

33.     Defendant Griffith Auto Group, Inc. t/a Heritage Volkswagen Parkville, is a Maryland entity whose principal place of business is located at 9215 Harford Rd., Parkville, Maryland 21234. Defendant Griffith Auto Group, Inc. also trades as Heritage Chrysler Dodge Jeep Ram Parkville, a Maryland entity whose principal place of business is located at 9219 Harford Rd., Parkville, Maryland 21234. Defendant Griffith Auto Group, Inc., on information and belief, is an entity that owns and operates car dealerships and/or whose subsidiaries own and operate car dealerships located in the state of Maryland. Griffith Auto Group, Inc. is primarily engaged in selling vehicles to consumers and each of its dealerships is primarily engaged in selling vehicles to consumers.

## III.     JURISDICTION AND VENUE

34.     Subject matter jurisdiction is proper under MD. CODE ANN., CTS. & JUD. PROC. § 1-501, and this Court has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-102(a), as the Defendants are domiciled in Maryland, are organized under the laws of Maryland, or maintain their principal places of business in Maryland, and will be served with process in Maryland.

35.     Venue is proper under MD. CODE ANN., CTS. & JUD. PROC. § 6-201(a) because Defendants carry out regular and substantial business in Baltimore County, and regularly solicit business from residents of Baltimore County. Named Plaintiff purchased her vehicle in Baltimore County. Among other things, Defendants have multiple dealerships located in Baltimore County and employ many Baltimore County residents, regularly provide credit to Baltimore County residents, regularly place liens on motor vehicles registered to residents of Baltimore County, and regularly avail themselves of the Baltimore County courts in the course of their business.

## IV.   FACTS APPLICABLE TO ALL COUNTS

36.     This is an action against the Defendant entities associating in fact to form MileOne Automotive, resulting from their uniform and consistent failure to disclose that hundreds, if not thousands, of vehicles sold to consumers were prior short-term rentals, as well as from a conspiracy among the Defendants to conceal and not disclose the prior rental history of those vehicles.

37.     Mile One Automotive acquires its inventory of used motor vehicles from a variety of sources, including direct purchases from consumers, auto auctions, and from manufacturers and car rental companies.

38.     At the time a vehicle is purchased for resale on one of the Dealer Defendants' lots located in the State of Maryland, the Dealer Defendant knows, and has information available to it, that identifies the prior use of the vehicle for short-term rental.

39.     In accordance with the disclosure provisions of COMAR 11.12.01.14(M)(1), motor vehicle dealers in Maryland must disclose to a prospective purchaser a vehicle's prior use for any purpose other than as a consumer good "clearly and conspicuously" in writing and, at a minimum, this disclosure must appear as a separate notation on the vehicle sales contract. This disclosure on the sales contract must specifically indicate, clearly and conspicuously, that the vehicle previously was used as a "short-term rental vehicle."

40.     COMAR 11.12.01.14(M) (emphasis added) provides that:

(I)     **Vehicles formerly used for a purpose other than a consumer good shall be clearly and conspicuously identified as to their former use. This includes, but is not limited to, vehicles formerly used:**

(a)     For public or governmental purposes and normally driven by multiple drivers;

(b)     As executive driven vehicles;

(c)     As demonstrators;

12

     (d)     For driver training;

     (e)     As taxicabs; or

     (f)     **As short-term rental vehicles.**

     (2)     The word "commercial", or similar ambiguous terms, may not be used to describe these vehicles.

41.     As a result, Maryland dealers must routinely and clearly and conspicuously disclose when the vehicles they offer for sale have been used as short-term rental vehicles, as required by COMAR 11.12.01.14(M)(1).

42.     MileOne Automotive does not make such disclosures as required by COMAR 11.12.01.14(M)(1). At all times relevant to this Amended Complaint, it has been the standard practice and conspiracy among the Defendants to conceal or otherwise fail to disclose to customers a vehicle's prior use as a short-term rental on the vehicle sales contract or elsewhere.

43.     In fact, even though MileOne Automotive includes on its pre-printed, standard Purchase Order form a box that serves as a means of disclosing prior rental use – proof that MileOne Automotive knows such disclosures are required – the Dealer Defendants uniformly and consistently fail to check this box even when they have information indicating vehicles previously were used for short-term rentals.

44.     In Maryland it long has been industry custom and practice, as required by the Maryland Motor Vehicle Administration ("MVA"), to make the required disclosure concerning short-term rentals on the vehicle sales contract. *See* Exhibit A, MVA Bulletin D-12-89-06 (February 1, 1990), p. 3 ("It must clearly be designated as a previously used short term rental vehicle on the sales agreement.")

45.     However, as stated, the Dealer Defendants do not disclose prior short-term rental use on their sales agreements as required by the MVA. Not one member of the Class in this case

had any disclosure of his or her vehicle's prior use as a short-term rental on his or her Purchase

Order or any Retail Installment Sales Contract as required in Maryland.

46.    The Defendants are well aware of their duty to clearly and conspicuously disclose

to retail buyers on the sales agreement when vehicles previously have been used for short-term

rental or other non-consumer use.

47.    The MileOne Automotive standard Purchase Orders contain a small pre-printed

space intended for such disclosure, which includes a place specifically intended for the

disclosure of any prior short-term rental use of the vehicle being sold.

48.    Nevertheless, the Dealer Defendants did not give any indication on the sales

agreements of Named Plaintiff or other members of the Class of the vehicle's prior rental history,

despite the use of a form containing a pre-printed space intended for such disclosure, thus

concealing material facts related to the transaction. To the contrary, the box designated "Short

Term Rental" on the Purchase Order of the Named Plaintiff was not checked and was left blank,

affirmatively representing to the Named Plaintiff that her vehicle had not previously been used as

a short-term rental.

49.    In all cases, the result was the same — the Dealer Defendants managed to

systematically and routinely sell a prior short-term rental vehicle without disclosing that history

to the buyer. Neither the Named Plaintiff nor any other member of the Class received a

disclosure of the prior rental use of the vehicle on his or her Purchase Order or Retail Installment

Sales Contract.

50.    Because Maryland law requires that dealers disclose any prior short-term rental

history clearly and conspicuously on a vehicle sales contract, the Dealer Defendants' failure to

make such a disclosure constituted an affirmative misrepresentation by the Dealer Defendants of

the vehicle's history on the sales agreements of the Named Plaintiff and the Class. However, even had MileOne Automotive accurately disclosed the prior rental use of the vehicles on its Purchase Orders, such disclosure nevertheless would not have complied with Maryland law because such a disclosure would not have been clear and conspicuous, as required by Maryland law.

51.    The Dealer Defendants' acts and material omissions, as set forth above, deceived or tended to deceive their customers by indicating that the vehicles sold to Named Plaintiff and the Class previously were used only as consumer goods when, in fact, these vehicles had been used for short-term rentals.

52.    As a result of the Defendants' conspiracy to sell prior short-term rentals without the disclosures required by Maryland law, and the other acts, material omissions, affirmative misrepresentations, and unfair and deceptive practices described herein, Named Plaintiff and the Class paid significantly more for their vehicles than they would have paid for comparable vehicles had the Dealer Defendants properly, and in a legal manner, disclosed the vehicles' prior use as short-term rentals; in addition, Named Plaintiff and the Class were denied the opportunity to decline to purchase vehicles previously known to be used for short-term rentals.

53.    The Defendants associated together as MileOne Automotive to advance each Defendant's personal financial stake in the above-referenced conspiracy and to illegally increase the individual profits and personal gain of each Dealer Defendant and its employees selling vehicles previously used as rental vehicles without the disclosures required by Maryland law.

## V.    FACTS APPLICABLE TO NAMED PLAINTIFF

54.    On or about June 16, 2009, Named Plaintiff Olivia Buckner Bailey purchased a used 2008 Mazda CX-7, VIN JM3ER29LX80213027, from Heritage primarily for personal, family and household use.

55.    Unbeknownst to the Named Plaintiff on the date of sale, the vehicle previously had been titled in the name of Hertz Vehicles LLC and previously had been used for short-term rental at BWI Airport. Named Plaintiff first learned in June 2012 that the vehicle she purchased previously had been used for short-term rentals.

56.    Defendants had actual knowledge at the time of sale that the vehicle sold to the Named Plaintiff previously had been used as a short-term rental. In fact, the Maryland Certificate of Title that Hertz Vehicles LLC provided to Heritage when it sold the vehicle to Heritage indicated the vehicle was used at BWI Airport as a short-term rental. Heritage, however, did not disclose and, as part of its scheme with other MileOne Automotive entities, conspired to conceal this information from Named Plaintiff.

57.    The Dealer Defendants were required by Maryland law and, in particular, COMAR 11.12.01.14(M)(1), to disclose clearly and conspicuously in writing on the sales agreement the fact that the vehicles sold to Named Plaintiff and the Class previously had been used for short-term rental. Nevertheless, the Dealer Defendants failed to provide the required clear and conspicuous written disclosure as to the vehicles of Named Plaintiff and other members of the Class on their vehicle sales agreements and conspired with Atlantic to conceal the prior history of these vehicles.

58.    Unbeknownst to Named Plaintiff and the other members of the Class on the date of sale, the vehicles sold to them would not pass without objection in the trade under the contract

16

description, in part because Maryland law required that the contract describe and disclose clearly and conspicuously the vehicle's prior use as a short-term rental, and the sales agreement contained no indication of the vehicle's prior rental history. Furthermore, by leaving blank the box on their purchase orders providing for disclosure of short-term rental history, Heritage and the other Dealer Defendants affirmatively and falsely represented that the vehicles sold to Named Plaintiff and Class members had not been used for short-term rentals even though they knew the vehicles had been used for this purpose.

59.     Based on the foregoing, the vehicles sold to Named Plaintiff and the Class were unmerchantable under Maryland law.

60.     As a result of Defendants' acts and omissions as set forth in this Amended Complaint, Named Plaintiff and other members of the Class were misled as to the prior use of their vehicles and their market values, paid more for the vehicles than they were worth, lost the opportunity to decline to purchase vehicles known to have previously been used for short-term rentals, lost the benefit of their bargains, and have sustained other losses and damages.

61.     As part of their regular business practices in Maryland, the Dealer Defendants systematically and regularly sell, and have conspired to sell, used vehicles that previously were used as short-term rental vehicles while failing to disclose and affirmatively concealing this information from their customers.

62.     At all relevant times herein, in connection with the activities giving rise to this action, the Defendants conspired with each other to engage in the various activities set forth herein, and agreed to participate in the operation of the conspiracy and scheme to defraud Named Plaintiff and other members of the Class, all as proscribed by Maryland law.

63.     The Defendants participated and engaged in the conspiracy described herein and were involved in the transactions involving Named Plaintiff and other members of the Class over a period spanning many years and involving hundreds and potentially thousands of transactions.

64.     If Named Plaintiff and Class members then had suspected that Defendants were engaged in a conspiracy to facilitate the fraudulent scheme described herein, at the expense of Named Plaintiff and Class members, they would have refused to conduct business with Defendants and their enterprise, would not have entered into transactions with Dealer Defendants or insisted upon significant price concessions, and would have sought to secure their rights under the law at that time.

65.     Named Plaintiff's and Class members' damages also were caused by the Defendants' conspiracy in that Named Plaintiff and Class members were overcharged for their vehicles as a result of the Defendants' fraudulent scheme and conspiracy.

66.     Upon information and belief, the profits obtained through the fraudulent scheme and conspiracy were shared amongst the co-conspirators according to a prior written contract or other agreement and used to market the MileOne Automotive entities as an excellent source of reliable used cars sold by reputable dealers.

## VI.    CLASS ACTION ALLEGATIONS

67.     Named Plaintiff brings this action on her own behalf and on behalf of all other similarly situated individuals pursuant to MD. RULE 2-231. The Class consists of:

> All Maryland residents who purchased from a MileOne Automotive dealership in Maryland a used motor vehicle that previously was used as a short-term rental, who were not provided clear and conspicuous notice of such use on their vehicle sales contract.

68.   Excluded from the Class are those individuals who now are or have ever been MileOne Automotive executives and the spouses, parents, siblings and children of all such individuals.

69.   The Amended Complaint covers the time period up to the resolution of this case. The statutes of limitation under each cause of action asserted herein are inapplicable to the Class members' claims based on the acts of omission and wrongful conduct by Defendants, as set forth herein, which equitably tolled the limitation period(s) under the circumstances described herein.

70.   Because the Defendants failed to disclose and wrongfully or fraudulently concealed the prior commercial use of the vehicles, Named Plaintiff and members of the class, despite the exercise of ordinary diligence, were unable to learn about the prior rental history at the time of sale.

71.   Due to their reliance on the accuracy, truthfulness and completeness of documents provided by the Defendants, Named Plaintiff and the Class members did not and could not have discerned their causes of action against Defendants.

72.   The documentation provided to Named Plaintiff and the Class in connection with their purchases purported to give them all necessary legal disclosures regarding the prior use of their vehicles, creating a false sense of security and preventing Plaintiff and Class members from becoming aware of a need or reason for inquiry into the adequacy, truthfulness or completeness of the disclosures provided to them prior to the purchase of their vehicles.

73.   Named Plaintiff and Class members were not aware of any facts that should have provoked their inquiry.

74.   The Class, as defined above, is identifiable.  Named Plaintiff is a member of the Class.

75.     On information and belief, the Class consists of hundreds and perhaps thousands of individuals and thus is so numerous that joinder of all members is impracticable.

76.     There are questions of law and fact that not only are common to the Class but that predominate over any questions affecting only individual Class members.   The common and predominating questions include, but are not limited to:

a.      Whether Dealer Defendants failed to provide clear and conspicuous notice in writing to customers of the vehicles' prior use as short-term rentals;

b.      Whether Dealer Defendants affirmatively concealed from their customers the vehicles' prior use as short-term rentals;

c.      Whether Defendants conspired to conceal and misrepresent in a systematic and uniform way the prior rental history of vehicles sold by the Dealer Defendants;

d.      Whether Defendants conspired together to develop and use form documents geared to conceal the prior rental history of vehicles sold by the Dealer Defendants;

e.      Whether Defendants are liable to Named Plaintiff and members of the Class for damages resulting from their pattern of selling vehicles that previously were used as short-term rentals without disclosing this information to their customers;

f.      Whether Defendants had knowledge that the vehicles sold were previously used as short-term rentals or for purposes other than as a consumer good;

g.      Whether declaratory and injunctive relief is proper to prevent Defendants from continuing to sell vehicles that previously were used as short-term rentals without disclosure to prospective customers;

h.      Whether Dealer Defendants' failure to disclose the prior short-term rental use of the vehicles they sold was an unfair and deceptive trade practice;

i.      Whether Dealer Defendants' affirmative concealment of the prior short-term rental use of the vehicles they sold was an unfair and deceptive trade practice;

j.      Whether Dealer Defendants negligently misrepresented the value of vehicles previously used for short-term rental to their customers;

k.      Whether Dealer Defendants negligently failed to disclose the vehicles' prior use for short-term rental to their customers;

l.      Whether under an implied warranty, a vehicle would pass without objection in the trade under the contract description when Dealer Defendants failed to disclose the vehicle's prior use as a short-term rental;

m.      Whether Defendants violated the Magnuson-Moss Act;

n.      Whether the Defendants conspired to engage in the violations of Maryland law described herein;

o.      Whether Atlantic is liable to Named Plaintiff and the Class for the common law torts and statutory violations of the Dealer Defendants under the doctrine of Respondeat Superior; and

p.      Whether the statutes of limitation applicable to each of the causes of action asserted herein have been equitably tolled by Defendants' wrongful or fraudulent concealment, despite ordinary diligence of Named Plaintiff and members of the Class.

77.   The claims of the Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of MD. RULE 2-231(a)(3), and are based on and arise out of similar facts constituting Defendants' wrongful conduct.

78.   The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of MD. RULE 2-231(b)(1)(A).

79.   Defendants' actions generally are applicable to the Class as a whole, and Named Plaintiff seeks equitable remedies with respect to the Class as a whole, within the meaning of MD. RULE 2-231(b)(2).

80.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of MD. RULE 2-231(b)(3). The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Named Plaintiff's counsel are experienced in class actions and foresee little difficulty in the management of this case as a class action.

## VII.  CIVIL RICO SUMMARY

81.   At all relevant times herein, the "enterprise" MileOne Automotive, a non-incorporated, informal association-in-fact formed by the Defendants, operated separately and distinct from each of the individual Defendants.

82.   All of the Defendants were entities capable of holding a legal or beneficial interest in property and were associated with MileOne Automotive.

83.   The Defendants knowingly participated in the scheme to defraud the Named Plaintiff and the Class by concealing and failing to disclose the prior rental use of the vehicles they sold, and they used the U.S. mails and electronic or telephonic communications for the purpose of executing this scheme.

22

84.     In addition, Defendants and MileOne Automotive were engaged in, and affected, interstate commerce in that, *inter alia*, the vehicle sales that are the subject of the scheme to defraud were consummated in Maryland using vehicles that in many circumstances were purchased out-of-state. In many instances, Defendants wired funds or mailed checks from Maryland to persons outside of Maryland to pay for prior short-term rentals later sold within Maryland. In other instances, transactions were funded by wire or check or electronic credit or debit transactions that originated from, or were transmitted to, a party located outside of Maryland. Additionally, the U.S. mails and/or wires were utilized in connection with the acquisition, marketing and sale of the vehicles that are the subject of this Amended Complaint.

85.     In furtherance of their fraudulent scheme, the Defendants on numerous occasions used and caused to be used, mail depositories of the U.S. Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories. These mailings included, but were not limited to, the mailing by Defendants of documents related to the registration of motor vehicles purchased and sold by Defendants with the Maryland Motor Vehicle Administration ("MVA"); the distribution of illicit proceeds of the racketeering conspiracy; the mailing and distribution among the Defendants of contracts, form sale and credit agreements, and other documents used in the transactions of Named Plaintiff and the Class; and the mailing of additional documents that facilitated the operation of Defendants' fraudulent scheme.

86.     During all relevant times, and in furtherance of and for the purpose of executing the fraudulent scheme described herein, the Defendants also used the wires to execute the above-described fraudulent scheme. The Defendants and their co-conspirators on hundreds if not thousands of occasions used, and caused to be used, telephone, Internet and other wire

transmissions including, but not limited to, use of the wires in the sale of vehicles previously used as prior short-term rental vehicles to the Named Plaintiff and members of the Class; in the emailing, faxing and transmission by wire of documents such as loan applications, vehicles sales and financing contracts and other documents related to the sale and financing of vehicles by Defendants to potential assignees in the transactions of Named Plaintiff and Class members who financed their vehicles with Defendants; in the electronic registration and titling system established with the MVA; and in the marketing of their enterprise "MileOne Automotive" and its vehicles — with the intent to defraud and in furtherance of their scheme to defraud.

87.     For example, the Defendants used the wires to market their goods and services under the MileOne Automotive brand and to market the vehicles they sold via the Internet and via the mileone.com and associated websites. Defendants used the Internet and the wires in connection with the sale of hundreds, if not thousands, of vehicles sold to members of the Class by providing a forum in which customers could search for and receive information regarding vehicles offered for sale by Defendants.

88.     Upon information and belief, on or about June 16, 2009, Defendants used the wires to advertise the vehicle sold to Ms. Bailey on the Internet, without the required clear and conspicuous disclosure of its prior use as a short-term rental vehicle that was required by Maryland law.

89.     Defendants further used the wires to send and receive purchase orders, retail installment contracts, and other documents among their co-conspirators, funding lenders, and other entities; to distribute money among those entities; and to transmit to the MVA information related to the registration and titling of motor vehicles purchased and sold by Defendants; to transmit among the Defendants forms and other documents used in the sale of vehicles; to send

and receive marketing information and payment to local media for the placement and purchase of advertising in local print and electronic media regarding vehicles sold by Defendants, including vehicles previously used as prior short-term rental vehicles but not disclosed as such as required by Maryland law; and to send and receive information regarding prior short-term rental vehicles with sellers of prior short-term rental vehicles, including auctions, other dealers, and rental car companies.

90.    Upon information and belief, on or about June 16, 2009, Defendants used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents related to the sale to a potential assignee for the financing account for Ms. Bailey's vehicle – namely JPMorgan Chase Bank, N.A. ("JPMorgan"), headquartered in New York, New York and whose auto finance division lists a current mailing address located in Fort Worth, Texas. Upon further information and belief, following the sale to Ms. Bailey, Defendants used the U.S. mails to submit the original documents relating to the financing and sale of Ms. Bailey's vehicle to its assignee, JPMorgan. In addition, upon information and belief, on or about July 9, 2009, Defendants used the wires to register and title Ms. Bailey's vehicle through an electronic registration and titling system and electronically transferred $20.00 of funds to the MVA in connection with this transaction. Each such use of the U.S. mails and wires was in furtherance of the fraudulent scheme described herein.

91.    The Defendants further used the wires to communicate with each other and in the course of operating the fraudulent scheme described herein and to facilitate the operation of this scheme through telephone calls, facsimile, e-mail transmissions, and wire transfers of money, resulting from and in furtherance of the fraudulent scheme.

92.    Also as set forth herein, during all relevant times, and in furtherance of and for the purpose of executing the fraudulent scheme described herein, the Defendants on hundreds if not thousands of occasions transported, transmitted, and transferred in interstate or foreign commerce money of the value of $5,000 or more, knowing the same to have been obtained and/or taken by fraud, an artifice of fraud, or by means of false or fraudulent pretenses or representations in violation of 18 U.S.C. §2314.

93.    Defendants caused the money collected by Defendants from Named Plaintiff and the other members of the Class as payment for the prior short-term rental vehicles sold to them in violation of the disclosure requirements under Maryland law – having a value of far more than $5,000 – to be transported in interstate commerce in the course of the execution of the Defendants' fraudulent scheme.  The Defendants knew this money was obtained or taken by fraud, an artifice of fraud, or by means of false or fraudulent pretenses or representations. In addition, upon information and belief, the Defendants divvied up their profits secured from selling prior short-term rental vehicles sold in violation of the disclosure requirements under Maryland law, and those profits – constituting far more than $5,000 – were distributed through interstate commerce.

94.    At all relevant times herein, in connection with the activities giving rise to this action, the Defendants conspired with each other, and other persons and entities, to engage in the various activities set forth herein; agreed to participate in the operation of the conspiracy and scheme to defraud Named Plaintiff and other customers; and aided and abetted one another in these activities, all as proscribed by both Maryland and federal law.

95.    The Defendants repeated their pattern of using the U.S. mails and/or telephone or wire transmissions in furtherance of their fraudulent scheme, and of transporting and causing

others to transport money and property with a value exceeding $5,000 in interstate commerce, both in furtherance of the fraudulent scheme and knowing the same to have been stolen, converted or taken by fraud, in connection with hundreds if not thousands of similar transactions.

96.     Each such use of the U.S. mails and/or wires in connection with this fraudulent scheme constituted the offenses of mail and/or wire fraud as proscribed and prohibited by 18 U.S.C. §§ 1341 and/or 1343. Each such transportation by Defendants of money or property with a value exceeding $5,000 in interstate commerce in connection with and in furtherance of the scheme and artifice to defraud, and with their knowledge of the same to have been stolen, converted or taken by fraud, constituted the offense of interstate transport of money, converted or fraudulently obtained in violation of 18 U.S.C. §2314.

97.     These uses of the U.S. mails and wires, and the interstate transport of money converted or fraudulently obtained, to further the fraudulent scheme, were not limited to the transactions of the Named Plaintiff, but also occurred in the transactions of each member of the Class. Each member of the Class completed a transaction in which the Dealer Defendants sold a vehicle previously used as a prior short-term rental vehicle, in which the Dealer Defendants did not disclose such fact as required under Maryland law, resulting in damages to the Named Plaintiff and the Class. The Defendants repeated this pattern – that is, the use of the U.S. mails and/or wires, and the interstate transport of money converted or fraudulently obtained, in furtherance of their fraudulent scheme – in numerous similar vehicle transactions.

98.     These acts were related, as they had the similar purpose of concealing and affirmatively misrepresenting the prior rental history of vehicles sold to Defendants' customers, and they used the same methods of commission of the concealment and affirmative misrepresentation.

99.     Defendants' enterprise MileOne Automotive has operated continuously from approximately 2001 to the present and has affected hundreds or thousands of customers' transactions through the systematic scheme to sell previously used prior short-term rental vehicles without the disclosure required by Maryland law. The Defendants knowingly participated and engaged in the enterprise and functioned as continuing units identifiable over a period of time and were involved in the transactions of the Named Plaintiff and other members of the Class over a period spanning more than ten years and involving hundreds or thousands of transactions. The Defendants' use of the U.S. mails and wires interstate, and the interstate transport of money and property with a value exceeding $5,000 as described herein, constitutes multiple instances of wire and mail fraud, multiple instances of interstate transport of money converted or fraudulently obtained, and further constitutes a pattern of racketeering activity.

100.     Nevertheless, the enterprise described above did not exist solely for the purpose of engaging in predicate acts violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), but the enterprise also engaged in legitimate vehicle sales transactions over the same period of time. Among other things, the enterprise developed forms and marketing campaigns for legitimate vehicle sales transactions and enabled the distribution of income from these legitimate vehicle sales transactions to the various Defendants, as well as to their owners and employees.

101.     The Named Plaintiff and members of the Class relied to their detriment on the legitimacy and legality of the RICO enterprise to their detriment.

102.     If Named Plaintiff and Class members then had suspected that MileOne Automotive was a racketeering enterprise and was being used to facilitate the fraudulent scheme described herein, at the expense of the Named Plaintiff and Class members, they would have

refused to conduct business with Defendants and their enterprise, would not have entered into transactions with MileOne Automotive or Defendants, and would have sought to secure their rights under the law at that time.

103.    Named Plaintiff and Class members' injuries to their property also were caused by the pattern of racketeering activity conducted through the enterprise described herein in that Named Plaintiff and the Class members were overcharged for their vehicles as a result of the Defendants' fraudulent scheme, which constituted a pattern of racketeering activity, were denied the opportunity to decline to purchase vehicles known to previously have been used for short-term rentals, and the profits obtained through the fraudulent scheme upon information and belief were split among the enterprise's members according to a prior written contract or other agreement.

## VIII.   **VICARIOUS LIABILITY OF ATLANTIC**

104.    At all relevant times, the Dealer Defendants were agents of Defendant Atlantic.

105.    The Dealer Defendants were owned and/or operated at all relevant times in whole or in part by Atlantic and were subject to Atlantic's direction and control. As a previously stated, Atlantic was the parent of the Dealer Defendants. The Chief Executive Officer of Atlantic was also the Chief Executive Officer of numerous approximately nine (9) of the Dealer Defendants.

106.    As a result, the Dealer Defendants agreed to act primarily for the benefit of Atlantic, which managed not only the MileOne Automotive brand, but all of the car dealerships that marketed themselves under this brand, including the Dealer Defendants.

107.    However, despite the foregoing, each Dealer Defendant and/or its respective owners and/or employees had an independent personal stake in their own particular corporation and its profitability, including but not limited to the illegal profits and/or commissions that could

be obtained from consumers by selling used vehicles without disclosing a vehicle's previous short-term rental use, in violation of Maryland law.

108.   When the Dealer Defendants purchased used vehicles that previously had been used as short-term rental vehicles for sale to consumers, they did so pursuant to an agreement and/or understanding with Atlantic concerning the procedure and/or methodology for the subsequent marketing and/or sale of such used vehicles to consumers, including the use of forms for selling such vehicles to consumers, without disclosing on the written sales agreements prior to sale the prior rental use of such vehicles.

109.   When the Dealer Defendants sold vehicles to consumers without clearly and conspicuously disclosing the prior rental use of those used vehicles on the face of the sales contracts as required by Maryland law, and profited from such sales, the Dealer Defendants upon information and belief did so under the direction of and in part for the financial benefit of Atlantic.

110.   The services provided by the Dealer Defendants, including the Dealer Defendants' above-described sales of vehicles in violation of Maryland law to the Named Plaintiff and Class members, were within the scope of their agency relationships with Atlantic, served the interests of Atlantic, and financially benefited Atlantic.

111.   Upon information and belief, the Dealer Defendants' conduct as sellers of used vehicles was, and continues to be, governed by agreements and/or understandings between Atlantic and the Dealer Defendants concerning the distribution of profits from the sale of such vehicles, as well as various marketing and other guidelines established by Atlantic and its MileOne Automotive brand.

112.    As described below, the Dealer Defendants engaged in both negligent and intentional misconduct in the sale of used vehicles to the Named Plaintiff and Class members, including violations of the Maryland Consumer Protection Act, Deceit by Non-disclosure, Unjust Enrichment, Negligent Misrepresentation, Breach of Contract, violations of RICO, and other wrongdoing.

113.    At the time the Dealer Defendants engaged in such misconduct, they were acting within the scope of their agency relationship with Atlantic.

114.    The Dealer Defendants engaged in the misconduct described herein in the furtherance of Atlantic's interests, which Atlantic promotes through, among other means, the MileOne Automotive website and brand.

115.    Based on the number of used vehicles the Dealer Defendants sell that previously have been used as short-term rentals, Atlantic's provision of form documents to its MileOne Automotive dealers for use in their vehicle sales, as well as MileOne's failure to clearly and conspicuously disclose to consumers on its MileOne website or sales forms the prior rental history of the vehicles advertised and sold, Atlantic had reason to expect that the Dealer Defendants would sell such used vehicles without disclosing this material information in the manner required by Maryland law.

116.    The above-described misconduct has caused the Named Plaintiff and Class members to incur the substantial damages described herein.

117.    As the Dealer Defendants' principal, Atlantic is liable for all of the damages incurred by the Named Plaintiff and Class members as a result of the acts committed by the Dealer Defendants within the scope of their agency relationship with Atlantic.

## IX.   CAUSES OF ACTION

### COUNT ONE
### (Implied Warranty of Merchantability)

118.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

119.   Auto dealers and other professional vehicle buyers in the trade need to know prior to purchasing a vehicle at an auto auction or from any other seller whether it has been used as a short-term rental vehicle both because use for short-term rental depresses the market value of such vehicles and because dealers and buyers in the trade know that a seller of the vehicle to a retail buyer will be legally obligated to disclose the vehicle's prior use for short-term rental, a disclosure that will depress the vehicle's market value.

120.   To accommodate these concerns of professional vehicle buyers in the trade, auto auctions that process thousands of vehicle transactions routinely require that short-term rental cars be offered for sale through "lanes" dedicated exclusively to short-term rentals so that buyers clearly understand the prior use to which these vehicles have been placed. In addition, when a short-term rental vehicle is sold outside of a lane dedicated to selling such vehicles, auto auctions routinely require that sellers "announce" (i.e., disclose) their knowledge that a vehicle previously has been used for short-term rental. In order for a short-term rental vehicle to be acceptable within the trade, its prior use for short-term rental must be disclosed prior to sale.

121.   Similarly, when a licensed auto dealer in Maryland sells a vehicle previously used for short-term rental to a prospective retail buyer, Maryland law mandates that the dealer must disclose to the prospective buyer prior to sale, clearly and conspicuously, the vehicle's prior use for short-term rental. A vehicle's prior use for short-term rental is so significant both within the industry and to the public that the major companies that offer vehicle history reports for sale both

32

to dealers and to the public (Carfax at www.carfax.com, and Experian at www.autocheck.com) include in their vehicle history reports information indicating whether a vehicle has been used for short-term rental.

122.    Under both a consumer's reasonable expectations as well as trade quality standards, a vehicle with a prior rental history that is not clearly and conspicuously disclosed cannot pass without objection in the trade under the contract description and simply is not merchantable. A significant segment of the buying public would object to purchasing a used vehicle without prior disclosure of its former use as a short-term rental.

123.    The Dealer Defendants are merchants engaged in the business of selling goods such as the used vehicles sold to Named Plaintiff and Class Members.

124.    At the time of the purchases to Named Plaintiff and Class members, the Dealer Defendants impliedly warranted to Named Plaintiff and Class members that the used vehicles they purchased conformed to the contract descriptions and affirmations of fact made to them by the Dealer Defendants about their vehicle's prior rental use.

125.    The used vehicles purchased by Named Plaintiff and Class members failed to conform to the implied warranties made to them for the reasons described above, and expressly incorporated herein. Further, the used vehicles delivered to Named Plaintiff and the Class members failed to conform to the contract descriptions and affirmations of fact about the history of the used vehicles that constituted part of the basis for Named Plaintiff's and the Class members' bargain.

126.    In breach of the implied warranty of merchantability that arises under MD. CODE ANN., COMM. LAW § 2-314(2)(a), on the date Named Plaintiff and Class members purchased

33

their vehicles, each vehicle would not pass without objection in the trade under the contract description and otherwise breached the implied warranty of merchantability.

127.  The vehicles would not and did not pass without objection in the trade under the contract description on the date of sale because, as established by COMAR 11.12.01.14(M)(1)(f) and the MVA Bulletin attached as Exhibit A, the sales agreement received by each Class member must contain a clear and conspicuous disclosure that the vehicle had previously been used as a short-term rental. However, the vehicle sales agreements provided to Named Plaintiff and Class members do not contain any such disclosure; on the contrary, by leaving the box for disclosure of prior short-term rentals unchecked, the Dealer Defendants affirmatively and falsely represented that the vehicles had not been used for short-term rentals. As a result, the short-term rentals sold to Named Plaintiff and the Class did not and could not pass without objection in the trade under the contract description in violation of MD. CODE ANN., COMM. LAW § 2-314(2)(a).

128.  The principal function of merchantability is to give legal effect to a buyer's reasonable expectations. Where, as here, Named Plaintiff and the Class had a reasonable and legally protected expectation of receiving goods that would pass without objection in the trade under the contract description, their reasonable expectations were not met and the Dealer Defendants breached the implied warranty of merchantability arising under MD. CODE ANN., COMM. LAW § 2-314(2)(a).

129.  The Defendants reached an agreement or understanding to breach the implied warranty of merchantability in the Dealer Defendants' transactions with Named Plaintiff and the Class, and they worked in combination with each other and performed the overt acts described herein to facilitate and engage in a conspiracy to breach the implied warranty of merchantability in these transactions. As a result of the Dealer Defendants' breach of, and the Defendants'

34

conspiracy to breach, the implied warranty of merchantability, Named Plaintiff and the Class

sustained the losses and damages described herein.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) enter judgment

against the Defendants jointly and severally for compensatory damages in an amount deemed

appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c)

award reasonable costs and attorneys' fees; (d) enter judgment against Atlantic on a Respondeat

Superior/vicarious liability basis for all damages for which a jury determines the Dealer

Defendants are liable to the Named Plaintiff and Class members; (e) enter an order certifying this

action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (f) award such

other and further relief as the Court deems just and proper.

## COUNT TWO
### (Magnuson-Moss Warranty Act)

130.    Plaintiff re-alleges and incorporates herein by reference the allegations set out in

the foregoing paragraphs as if fully set forth below.

131.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

(the "Act") in 1975 in response to widespread complaints from consumers that many warranties

were misleading and deceptive, and were not being honored. To remedy this problem of

deception and failure to honor warranties, the Act imposes civil liability on any "warrantor" for,

inter alia, failing to comply with any obligation under a written warranty and/or implied

warranty. *See* 15 U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal

and equitable relief." *Id.* The Act authorizes the award of attorneys' fees and expressly

authorizes class actions. 15 U.S.C. § 2310(e).

132.    Defendants are "warrantor[s]" within the meaning of Section 2301(5) of the Act.

133.    Named Plaintiff and other members of the Class are "consumers" within the

meaning of Section 2301(3) of the Act.

134.   The Dealer Defendants' breach of the implied warranty of merchantability, and the Defendants' conspiracy to breach the implied warranty of merchantability, set forth in Count One of this Amended Complaint and expressly incorporated herein, violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, including 15 U.S.C. § 2310(d).

135.   The Defendants reached an agreement or understanding to violate the Magnuson-Moss Warranty Act in the Dealer Defendants' transactions with Named Plaintiff and the Class, and they worked in combination with each other and performed the overt acts described in this Amended Complaint to facilitate and engage in a conspiracy to violate the Magnuson-Moss Warranty Act in these transactions.

136.   As a result of the Dealer Defendants' violation of, and Defendants' conspiracy to violate, the Magnuson-Moss Warranty Act, Named Plaintiff and the Class sustained the losses and damages described herein.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) enter judgment against the Defendants jointly and severally for compensatory damages in an amount deemed appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c) award reasonable costs and attorneys' fees; (d) enter judgment against Atlantic on a Respondeat Superior/vicarious liability basis for all damages for which a jury determines the Dealer Defendants are liable to the Named Plaintiff and Class members; (e) enter an order certifying this action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (f) award such other and further relief as the Court deems just and proper.

## COUNT THREE
### (Maryland Consumer Protection Act)

137.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

138.   Dealer Defendants are each merchants within the meaning of the Maryland Consumer Protection Act ("CPA"), MD. CODE ANN., COMM. LAW § 13-101(g), and are subject to all of the CPA's provisions prohibiting unfair or deceptive trade practices, including those set forth in MD. CODE ANN., COMM. LAW §§ 13-301 and 13-303.

139.   The Dealer Defendants made false and misleading representations to the Named Plaintiff and Class members in the offer to sell, and sale, of vehicles to them that had the capacity, tendency, or effect of deceiving or misleading consumers.

140.   The Dealer Defendants falsely and misleadingly represented to the Named Plaintiff and Class members that the vehicles they purchased had a characteristic they did not have and possessed a particular standard and quality they did not possess by representing to Named Plaintiff and the Class that the vehicles they purchased had not been used for short-term rentals.

141.   The Dealer Defendants' affirmative misrepresentations, failures to disclose to, and their concealment from, Named Plaintiff and Class members the material fact that their vehicles had been used for short-term rental constituted unfair and deceptive trade practices in violation of the CPA, MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv) and (3), and 13-303.

142.   On information and belief, the Dealer Defendants regularly and systematically acquire vehicles for the purpose of resale that have been used as short-term rentals, and they

retail these vehicles to the public without disclosing the prior rental use to their customers; the Defendants conspire together to do so, in violation of the CPA, to illegally increase their profits.

143. The Defendants were directly involved in the transaction of Named Plaintiff as co-conspirators and joint tortfeasors. As previously stated, at the time of the offer to sell and sale of a used vehicle to the Named Plaintiff, the Defendants associated together under the MileOne Automotive moniker to advertise and market themselves, purchased used vehicles that previously had been used as rental vehicles, used and agreed to use form documents in the course of their sales of used vehicles, and agreed to conceal from, and not to disclose to, purchasers the prior rental use of vehicles to advance each Defendant's independent personal gain and individual financial stake in its respective corporation and in the conspiracy. As a result, when Heritage failed to disclose and concealed from the Named Plaintiff the prior rental use of the vehicle she was purchasing, Heritage did so as part of a conspiracy, scheme and concerted action in which all of the other Defendants participated, for the joint benefit, and with the knowledge and consent of the other Defendants as co-conspirators.

144. The Defendants, all associating under the MileOne Automotive umbrella, reached an agreement or understanding to violate the CPA in their transactions with Named Plaintiff and the Class, and they worked in combination with each other and performed the overt acts described herein to facilitate and engage in a conspiracy to violate the CPA.

145. The Dealer Defendants' failure to comply with the law governing the transactions of the Named Plaintiff and Class members, and the Defendants' conspiracy to do so, was deceptive and unfair within the meaning of the CPA. The Defendants' suppression and omission of material facts and affirmative misrepresentations identified herein had the capacity, tendency

or effect of deceiving and misleading the Named Plaintiff and members of the Class and in fact deceived and misled them, causing them to sustain the losses and damages described herein.

146.    The Dealer Defendants' acts and omissions as aforesaid, including their failure to disclose and concealment of the material fact that their vehicles previously had been used as short-term rentals, and their affirmative misrepresentation to Named Plaintiff and the Class that the vehicles had not been used for a purpose other than as a consumer good, tended to and did deceive Named Plaintiff and the members of the Class and constitute an unfair and deceptive trade practice, in violation of MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv), and/or (3), and 13-303(1)-(2).

147.    As a result of the unfair and deceptive trade practices described above, Named Plaintiff and the Class agreed to and did purchase their vehicles, Named Plaintiff and the Class paid Defendants significantly more for their vehicles than they were worth, were denied an opportunity to decline to purchase vehicles known to have previously been used for short-term rentals, and Named Plaintiff and the Class sustained the other damages and losses described herein.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) enter judgment against the Defendants jointly and severally for compensatory damages in an amount deemed appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c) award reasonable costs and attorneys' fees; (d) enter judgment against Atlantic on a Respondeat Superior/vicarious liability basis for all damages for which a jury determines the Dealer Defendants are liable to the Named Plaintiff and Class members; (e) enter an order certifying this action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (f) award such other and further relief as the Court deems just and proper.

## COUNT FOUR
### (Deceit by Non-Disclosure or Concealment)

148.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

149.   On information and belief, the Dealer Defendants regularly acquire vehicles for the purpose of resale that have been used as short-term rentals, and they regularly and intentionally retail these vehicles to the public without disclosing this prior use to their customers in violation of Maryland law to increase their respective profits. As described above, Named Plaintiff entered into a written sales agreement to purchase a used Mazda CVB-7 from Defendant Heritage. The Class members entered into similar written sales agreements to purchase used vehicles from the Dealer Defendants.

150.   The transaction entered into by the Named Plaintiff with Heritage is a small but representative sample of the Defendants' systematic fraud on the public and their conspiracy to commit fraud.

151.   The Dealer Defendants have a duty to disclose the prior use of vehicles employed as short-term rentals, but they intentionally and systematically concealed from Named Plaintiff and other members of the Class and otherwise failed to disclose this fact that they had a duty to disclose.

152.   Indeed, due to the requirements of Maryland law that any prior short-term rental history be disclosed clearly and conspicuously on a vehicle sales contract, and Dealer Defendants' failure to check the short-term rental box on MileOne Automotive's standard Purchase Order, the Dealer Defendants' failure to make such a disclosure on a form that contained a pre-printed space for such disclosure constituted an affirmative misrepresentation of

the vehicle's history by the Dealer Defendants who sold the vehicles to the Named Plaintiff and the Class Members at the time of the consummation of each transaction.

153.   The Dealer Defendants acted with an intent to mislead and deceive the Named Plaintiff and Class members.

154.   Through their affirmative misrepresentations and concealments, the Dealer Defendants intended to induce Named Plaintiff and the Class to act differently than they would have acted had they known the true facts – namely, to purchase a less desirable and less valuable vehicle which previously had been used as a rental instead of a used vehicle that did not have a history of short-term rental use.

155.   The Named Plaintiff and Class members acted in justifiable reliance on the Dealer Defendants' concealments, failures to disclose and affirmative misrepresentations concerning the prior rental use of the used cars they purchased when they consummated these transactions based on false and misleading representations by the Dealer Defendants concerning the prior use of the vehicles they purchased.

156.   The Defendants reached an agreement or understanding to conceal from, and fail to disclose to, Named Plaintiff and the Class material facts concerning the prior short-term rental use of the vehicles sold to them and to engage in the scheme and artifice described herein to defraud Named Plaintiff and the Class.  The Defendants participated in this fraudulent scheme and worked in combination with each other, performing the overt acts described herein to facilitate and engage in a conspiracy to deceive and defraud Named Plaintiff and the Class.

157.   On information and belief, each Defendant – through its association as part of the MileOne Automotive group and under the direction and pursuant to the oversight of Defendant Atlantic – knowingly and intentionally perpetrated, participated in, aided, abetted and benefitted

from the fraudulent conspiracy and scheme to sell vehicles previously used for short-term rentals without disclosure to Named Plaintiff and members of the Class.

158.   As a result of the Dealer Defendants' affirmative misrepresentations concerning, and concealment of, the aforesaid material facts, as well as the Defendants' conspiracy to engage in this conduct, Named Plaintiff and the Class sustained the losses and damages described herein, including but not limited to paying significantly more for their vehicles than these vehicles were worth and losing the opportunity to decline to purchase vehicles known to have been previously used for short-term rentals.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) enter judgment against the Defendants jointly and severally for compensatory damages in an amount deemed appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c) award reasonable costs and attorneys' fees; (d) enter judgment against Atlantic on a Respondeat Superior/vicarious liability basis for all damages for which a jury determines the Dealer Defendants are liable to the Named Plaintiff and Class members; (e) enter an order certifying this action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (f) award such other and further relief as the Court deems just and proper.

## COUNT FIVE
### (Unjust Enrichment)

159.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

160.   As set forth above, the Defendants deceptively assessed and collected payments for vehicles that had been used as short-term rentals in amounts that exceeded the represented value of these vehicles, which conferred a substantial benefit on each of the Defendants.

161.   The Defendants reached an agreement or understanding to assess and collect payments for vehicles that had been used as short-term rentals in amounts that exceeded the value of those vehicles, and they worked in combination with each other and engaged in a conspiracy to do so.

162.   Upon information and belief, payments by the Named Plaintiff and Class members to one Defendant actually resulted in separate monetary benefits to each of the individual Defendants resulting from their conspiracy and association as MileOne Automotive. The Defendants and/or their owners and employees had an individual profit motive in selling prior-rental vehicles without disclosing such prior use to consumers.

163.   The Defendants obtained possession of money belonging to the Named Plaintiff and the Class members by concealing from, failing to disclose and/or misrepresenting the description, condition and prior use of the vehicles Named Plaintiff and Class members were purchasing. Because the Defendants misrepresented and actively concealed the prior rental use of the vehicles that Named Plaintiff and the Class members purchased, Named Plaintiff and the Class purchased such vehicles based on a mistake of fact concerning the rental history of these vehicles.

164.   The Defendants were aware, and had knowledge, of the substantial benefits conferred by the Named Plaintiff and the other members of the Class on the Defendants by paying the Defendants amounts that exceeded the value of the vehicles sold to the Named Plaintiff and the Class.

165.   As a result of the Defendants' above-described misconduct, as well as the Defendants' conspiracy to unjustly enrich themselves at the expense of the Named Plaintiff and Class members, the Defendants have come into the possession of money in the form of payments

to which they had, and have, no right at law or in equity and they have been unjustly enriched at the expense of the Named Plaintiff and Class members.

166. Under these circumstances, it would be inequitable for the Defendants to retain any such monies that they had no legal right to charge or collect.

167. As a consequence, Named Plaintiff and other members of the Class have been damaged and the Defendants should be required to make restitution to them.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) award restitution for Named Plaintiff and each Class member in an amount deemed appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c) award reasonable costs and attorneys' fees; (d) award equitable and injunctive relief prohibiting the Defendants from selling short-term rentals without proper disclosure to consumers; (e) enter judgment against Atlantic on a Respondeat Superior/vicarious liability basis for all damages for which a jury determines the Dealer Defendants are liable to the Named Plaintiff and Class members; (f) enter an order certifying this action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (g) award such other and further relief as the Court deems just and proper.

## COUNT SIX
### (Negligent Misrepresentation)

168. Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below, except to the extent they allege intentional conduct by Defendants. In this Count, Plaintiff pleads in the alternative as permitted by Maryland law.

169. The Dealer Defendants owed a duty to exercise care in the disclosures they provided to Named Plaintiff and the Class in connection with the sale, and offer for sale, of vehicles to them. The Dealer Defendants owed a duty to ensure that their written disclosures to

Named Plaintiff and the Class were accurate and non-misleading and complied with Maryland law governing the sale of used vehicles. In particular, the Dealer Defendants owed a duty, prior to sale, to clearly and conspicuously disclose on the face of the written sales agreements of the Named Plaintiff and Class members any previous non-consumer use, including short-term rental of the vehicles sold to the Named Plaintiff and the Class.

170.   However, the Dealer Defendants negligently omitted and failed to disclose to Named Plaintiff and the Class members the material fact that the vehicles sold to them previously were used as short-term rental vehicles, negligently misrepresented that the vehicles sold to them previously were used for consumer purposes only, negligently misrepresented the condition, quality and standard of the vehicles, negligently failed to disclose that the price of the vehicles did not accurately reflect their value, and failed to disclose that the vehicles would not pass without objection in the trade under the contract description.

171.   The Dealer Defendants breached the duty of care they owed to Named Plaintiff and the Class by making the above-described false, misleading and negligent misrepresentations and by negligently omitting material facts, as described above.

172.   At the time the Dealer Defendants made the above-described false statements and material omissions of fact, they intended for the Named Plaintiff and Class members to act or rely on these statements and/or material omissions of fact.

173.   The Dealer Defendants knew, or had reason to know, that Named Plaintiff and the Class probably would rely on the Dealer Defendants' above-described negligent representations concerning the history, condition, quality, standard and value of the vehicles which, if false, would cause loss, injury or damage to Named Plaintiff and the Class.

174.   The Named Plaintiff and the Class justifiably and reasonably acted to their detriment in reliance on the Dealer Defendants' false and misleading representations and material omissions. The Named Plaintiff and the Class members were induced to enter into sales agreements for vehicles that were of a lesser quality and condition than represented by the Dealer Defendants for prices that were significantly higher than the value of the vehicles they purchased.

175.   On information and belief, each of the Defendants knowingly perpetrated, participated in, aided, abetted and individually benefitted from the fraudulent conspiracy and scheme to sell vehicles previously used for short-term rental without disclosure of this material fact to the Named Plaintiff and Class.

176.   As described above, the Defendants reached an agreement and/or understanding concerning the written disclosures to be made to the Named Plaintiff and the Class members in connection with their vehicle purchases and failed to make the written disclosures required by Maryland law in furtherance of their conspiracy for their own personal gain, advantage and profit, resulting in legal damage to the Named Plaintiff and Class members.

177.   As a direct and proximate result of the Dealer Defendants' negligent statements, representations, and material omissions of fact, as well as the Defendants' conspiracy concerning these representations, Named Plaintiff and the other members of the Class were induced, *ab initio*, to enter into sales agreements for vehicles with the Dealer Defendants and to do so for a price significantly higher than the represented value of the vehicles, and they paid significantly more for their vehicles than they were worth and otherwise were harmed.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) enter judgment against the Defendants jointly and severally for compensatory damages in an amount deemed

appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c) award reasonable costs and attorneys' fees; (d) enter judgment against Atlantic on a Respondeat Superior/vicarious liability basis for all damages for which a jury determines the Dealer Defendants are liable to the Named Plaintiff and Class members; (e) enter an order certifying this action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (f) award such other and further relief as the Court deems just and proper.

## COUNT SEVEN
### (Breach of Contract)

178.    Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

179.    On or about June 16, 2009, Named Plaintiff entered into a written sales agreement to purchase a used Mazda CVB-7 from Defendant Heritage. The Class members entered into similar written sales agreements to purchase used vehicles from the Dealer Defendants.

180.    The written sales agreements of the Named Plaintiff and the Class members set forth all of the terms of the contracts with the Dealer Defendants from whom they purchased their used vehicles.

181.    Pursuant to the terms of their written contracts with the Named Plaintiff and Class members, the Dealer Defendants promised to sell to the Named Plaintiff and the Class members vehicles that comported with the descriptions of the vehicles set forth in the written sales agreements. The Dealer Defendants further promised to sell to the Named Plaintiff and the Class members vehicles that were in the condition represented in the sales agreements, that had not previously been used in any manner inconsistent with the written disclosures made to Named Plaintiff and the Class in connection with their purchases, and that had not previously been used

as prior short-term rentals unless such former use was clearly and conspicuously disclosed before purchase on the face of the written sales agreement as required by Maryland law.

182.    The written sales agreements between the Dealer Defendants and the Named Plaintiff and Class Members contained an implied covenant of good faith and fair dealing, obligating the Dealer Defendants to exercise good faith in performing their contractual obligations and to deal honestly and fairly with the Named Plaintiff and the Class.

183.    The Dealer Defendants materially breached their contracts with Named Plaintiff and the Class by: (a) failing to sell them the vehicles promised; (b) selling Named Plaintiff and the Class used vehicles that failed to comport with the descriptions of the vehicles set forth in the written sales agreements; (c) selling Named Plaintiff and the Class used vehicles previously used in a manner inconsistent with the written disclosures made to them in connection with their purchases; (d) failing to sell to Named Plaintiff and the Class vehicles in the condition and of the quality and standard represented in the sales agreements; (e) selling Named Plaintiff and the Class members vehicles previously used as short-term rentals without clearly and conspicuously disclosing such prior use on the face of their written sales agreements before purchase; (f) denying Named Plaintiff and Class members the opportunity to decline to purchase vehicles known to have previously been used as short-term rentals; and by (g) acting dishonestly and in bad faith in their dealings with the Named Plaintiff and Class members.

184.    As described herein, the Defendants reached an agreement and/or understanding concerning the written disclosures to be made to the Named Plaintiff and the Class members in connection with their vehicle purchases. Upon information and belief, Defendants failed to make the written disclosures required by Maryland law in furtherance of their conspiracy, as well as for their own individual gain, advantage and profit, resulting in legal damage to the Named

Plaintiff and Class members. As stated previously, the Defendants had an individual and personal stake in achieving the objectives of the conspiracy.

185.    In furtherance of their conspiracy, the Defendants also agreed to develop and use form documents to offer for sale and sell to consumers prior short-term rental vehicles, which contained misleading and fraudulent material omissions and misrepresentations concerning the rental history of the vehicles sold to Named Plaintiff and the Class, in violation of Maryland law.

186.    As a result of the Dealer Defendants' above-described material breaches of contract, and the Defendants' conspiracy to breach the contract of the Named Plaintiff and Class members,  Named Plaintiff and the Class members have incurred damages, including but not limited to the loss of the benefit of their bargain with the Dealer Defendants and the opportunity to decline to purchase vehicles known to have been previously used for short-term rentals.

187.    The Named Plaintiff and Class bargained to purchase, and agreed to pay for, vehicles used previously only as represented, and of the condition, quality and standard represented in their written sales agreements.  However, as a result of the Dealer Defendants' above-described material breaches of contract, and Defendants' conspiracy to breach these contracts, Named Plaintiff and Class members acquired vehicles previously used as short-term rentals and, in doing so, acquired vehicles worth less than they bargained to acquire, paid more for these vehicles than they were worth, and otherwise were harmed.

WHEREFORE, Named Plaintiff and the Class pray that the Court: (a) enter judgment against the Defendants jointly and severally for compensatory damages in an amount deemed appropriate by a jury; (b) award pre-judgment interest and costs for each Class member; (c) award reasonable costs and attorneys' fees; (d) enter judgment against Atlantic on a Respondeat Superior/vicarious liability basis for all damages for which a jury determines the Dealer

Defendants are liable to the Named Plaintiff and Class members; (e) enter an order certifying this action as a class action pursuant to MD. RULE 2-231(b)(1), (2) and/or (3); and (f) award such other and further relief as the Court deems just and proper.

## COUNT EIGHT
### (Violation of RICO – 18 U.S.C. §1962(a))

188.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

189.   Named Plaintiff and each Class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

190.   Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(a).

191.   The Defendants formed an association-in-fact with each other – MileOne Automotive – an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in, and the activities of which affect, interstate commerce.

192.   Each of the Defendants used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to acquire an interest in, establish, and operate the enterprise.

193.   These unlawful activities included multiple instances of mail and wire fraud, including but not limited to the mail and wire fraud described in Part VII, above, and bank wired monies in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants to maintain and operate it.

194.   These unlawful activities also included multiple instances of interstate transport of money converted or fraudulently obtained, including but not limited to the interstate transport of money converted or fraudulently obtained described in Part VII above, which occurred

uniformly and consistently during the existence of the enterprise and permitted Defendants to maintain and operate this enterprise.

195.    One of the purposes of the enterprise created by the Defendants was to pool resources and expertise to acquire, advertise and sell motor vehicles used for short-term rentals, including allowing the Defendants to establish a methodology and scheme for selling prior short-term rental vehicles without the disclosures required by Maryland law in a uniform way, using form documents developed for use by MileOne Automotive's association-in-fact enterprise, and to illegally profit from this scheme at the expense of the Named Plaintiff and the Class.

196.    This association-in-fact had a common or shared purpose – that is, to give effect to the prior short-term rental sale scheme described herein and to allow the Defendants to use form documents and process to conduct their vehicle sales transactions, and it had a distinct division of labor.

197.    This association-in-fact has continued as a unit, with a core membership, over a substantial period of time, exceeding ten years, and is an ongoing organization established for an economic motive. Although the membership in the enterprise has changed, and some of the Dealer Defendants were added into the enterprise over time, the structure of the organization and the functions undertaken by its members have remained constant. The association-in-fact remained viable and active at the time this action was filed.

198.    Defendants each played a substantial and distinct role in the scheme.

199.    In this association-in-fact, each Defendant car dealership agreed to promote and advertise itself as one of an affiliated group of companies operating under the banner "MileOne Automotive". The Defendants agreed that they would subject themselves to oversight by a

group of persons identified to the public as officers and executives of MileOne Automotive, although no such company exists.

200.   Upon information and belief, the Dealer Defendants agreed that their sales practices and marketing campaigns would be governed by general guidelines developed through their MileOne Automotive association.

201.   However, MileOne Automotive is not an entity with a legal existence.

202.   The Defendants created and disseminated for use, and the Dealer Defendants agreed to use and used in their operations, form documents and procedures to sell used vehicles, including but not limited to purchase order forms that did not comport with Maryland law and that were used to mislead consumers about the prior history of their vehicles.

203.   The Defendants further agreed to use and used deceptive procedures for selling prior rental vehicles without the disclosure required by Maryland law, even when using form documents that contained areas designated for the disclosure of the prior rental history of the vehicle being sold.

204.   Each member of the Class received form documents that contained fraudulent and false statements and/or omissions and that concealed material facts, which caused Named Plaintiff and members of the Class to act in reasonable reliance on these deceptive documents and to believe that: (i) MileOne Automotive was a legitimate enterprise and was proceeding legitimately, and (ii) the vehicles sold to them had no short-term rental history.

205.   All of these activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Named Plaintiff and each Class member. Defendants' illegal activities persisted over an extended period of time.

206.   Each document provided to Named Plaintiff and the other members of the Class in the course of their vehicle sales transactions was provided in furtherance of the conspiracy described herein, for which the Defendants are liable.

207.   The reliance of the Named Plaintiff and members of the Class on the material omissions in the documents and the falsehoods contained in such documents and other communications was reasonable and justified because such documents and communications would and did cause persons of ordinary experience to be convinced of the legality and legitimacy of the operations of MileOne Automotive.

208.   The activities of the Defendants as described herein and in Part VII entailed multiple instances of mail fraud, consisting of intentional mail fraud intended to induce, and inducing, Named Plaintiff and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. §1341.

209.   These activities of the Defendants also entailed multiple instances of wire fraud, consisting of intentional wire fraud intended to induce, and inducing, Named Plaintiff and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. §1343.

210.   These activities of the Defendants also entailed multiple instances of interstate transport of money converted or fraudulently obtained, in violation of 18 U.S.C. § 2314.

211.   Through the use of this illegal and fraudulent scheme, and through their efforts to operate and maintain the enterprise described herein and to facilitate the sale of prior short-term rental vehicles without the disclosures required by Maryland law, the Defendants have been able to retain money that is rightfully payable to Named Plaintiff and Class members, and to collect money not properly due from Named Plaintiff and Class members.

212.   The Defendants have retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).

213.   Furthermore, the Defendants each previously acquired illicit funds through similar fraudulent operations involving mail and wire fraud and interstate transport of money converted or fraudulently obtained, and used said proceeds to continue their scheme by investing in and operating MileOne Automotive.

214.   Through Defendants' use of the illegal and fraudulent scheme for selling prior short-term rental vehicles without the disclosures required under Maryland law, and through their efforts to operate and maintain the enterprise described herein to facilitate the sale of prior short-term rental vehicles without the disclosures required by Maryland law, Defendants have been able both to maintain the enterprise, and to profit from it at the expense of Named Plaintiff and the Class.

215.   Named Plaintiff and all Class members have been injured in their property by reason of the violations of § 1962(a), *inter alia*, because Named Plaintiff and all Class members were overcharged for their purchases from Defendants as a result of the reinvestment and use of funds by Defendants derived from Defendants' pattern of racketeering activity to fund and operate MileOne Automotive, and to facilitate and incentivize the Defendants' actions in deceptively selling prior rental vehicles without the disclosures required by Maryland law.

WHEREFORE, Named Plaintiff and the Class pray that the Court (a) find Defendants jointly and severally liable for a violation of 18 U.S.C. § 1962(a) and award Named Plaintiff and the Class members three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO; (b) declare that MileOne Automotive is a racketeering enterprise and that the fraudulent

scheme set forth in this Amended Complaint constitutes a pattern of racketeering activity; (c) permanently enjoin and restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior short-term rental vehicles without the clear and conspicuous disclosures required by Maryland law; (d) award pre-judgment interest and costs for each Class member; (e) award reasonable costs and attorneys' fees; (f) award such other and further relief as the Court deems just and proper.

## COUNT NINE
### (Violation of RICO – 18 U.S.C. § 1962(c))

216.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

217.   Named Plaintiff and each Class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

218.   Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(c).

219.   At all relevant times, the "enterprise" described herein, which is a non-incorporated association, operated separately and distinct from the Defendants that committed the violations alleged. As previously stated, each of the Defendants is a separately incorporated entity, has its own business location and employees (other than an overlap in management), and has an individual profit motive and personal financial stake in the conspiracy. The Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

220.   Defendants were each associated with the enterprise and participated in its management and/or operation by directing its affairs and/or by conducting business with each

other and by participating and assisting in the fraudulent scheme described herein to acquire and sell prior short-term rental vehicles without the disclosures required under Maryland law.

221.    The Defendants participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful racketeering activity under 18 U.S.C. §1961(1)(B), 1961(5) and 1962(c), including:

(a) Multiple acts of mail fraud in violation of 18 U.S.C. § 1341;

(b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c) Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

222.    Each Class member suffered injury to his or her property within the meaning of 18 U.S.C. § 1964(c) by reason of the Defendants' violations of 18 U.S.C. § 1962(c).

WHEREFORE, Named Plaintiff and the Class pray that the Court (a) find Defendants jointly and severally liable for a violation of 18 U.S.C. § 1962(c) and award Named Plaintiff and the Class members three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO; (b) declare that MileOne Automotive is a racketeering enterprise and that the fraudulent scheme set forth in this Amended Complaint constitutes a pattern of racketeering activity; (c) permanently enjoin and restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior short-term rental vehicles without the clear and conspicuous disclosures required by Maryland law; (d) award pre-judgment interest and costs for each Class member; (e) award reasonable costs and attorneys' fees; (f) award such other and further relief as the Court deems just and proper.

## COUNT TEN
### (Violation of RICO – 18 U.S.C. § 1962(d))

223.   Plaintiff re-alleges and incorporates herein by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

224.   Named Plaintiff and each Class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

225.   Each Defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(d).

226.   Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

227.   The Defendants as co-conspirators were associated with the enterprise described herein and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

228.   The Defendants each knew of the RICO violations of the enterprise described in this Amended Complaint and agreed to facilitate and participate in those activities.

229.   The Defendants as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish, and operate the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, as well as multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

230.   The Defendants as co-conspirators conspired to operate, maintain control of, participate and maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail

fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

231.   The Named Plaintiff and each Class member have suffered injury to their property within the meaning of 18 U.S.C. §§ 1964(c) by reason of the commission of the overt acts described herein, constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

WHEREFORE, Named Plaintiff and the Class pray that the Court (a) find Defendants jointly and severally liable for a violation of 18 U.S.C. § 1962(d) and award Named Plaintiff and the Class members three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO; (b) declare that MileOne Automotive is a racketeering enterprise and that the fraudulent scheme set forth in this Amended Complaint constitutes a pattern of racketeering activity; (c) permanently enjoin and restrain the Defendants and their agents, employees, representatives and all persons acting on their behalf from selling prior short-term rental vehicles without the clear and conspicuous disclosures required by Maryland law; (d) award pre-judgment interest and costs for each Class member; (e) award reasonable costs and attorneys' fees; (f) award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Richard S. Gordon
Benjamin H. Carney
Stacie F. Dubnow
GORDON & WOLF, CHTD.
102 W. Pennsylvania Ave., Suite 402
Towson, Maryland 21204
(410) 825-2300

Mark H. Steinbach
Of Counsel
O'TOOLE ROTHWELL
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

**Attorneys for Plaintiff and the Class**

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

_____
Richard S. Gordon

RECEIVED AND FILED
2013 APR -8 P 4:04
CLERK OF CIRCUIT COURT
BALTIMORE COUNTY